## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

JO ANN WEITZEL,                          :
                                         :
          Plaintiff                      :
                                         :          No. 3:12-CV-220
     vs.                                 :
                                         :          (Judge Nealon)
CAROLYN W. COLVIN, ACTING                :
COMMISSIONER OF SOCIAL                   :
SECURITY,                                :
                                         :                        FILED
          Defendant                      :                       SCRANTON

                                                                 AUG 2 3 2013

                              **MEMORANDUM**
                                                          PER_____
                                                              DEPUTY CLERK

**Background**

          The above-captioned action is one seeking review of a

decision of the Commissioner of Social Security ("Commissioner")

denying Plaintiff Jo Ann Weitzel's claim for social security

disability insurance benefits.

          Weitzel protectively filed her application for

disability insurance benefits on March 18, 2008.  Tr. 17, 64, 97-

101 and 108.[1]  The application was initially denied by the Bureau

of Disability Determination[2] on June 10, 2008. Tr. 64 and 66-69.

On July 7, 2008, Weitzel requested a hearing before an

administrative law judge. Tr. 17 and 72.  After about 21 months

had passed, a hearing was held on April 8, 2010, before an

---

1.  References to "Tr.__" are to pages of the administrative
record filed by the Defendant as part of the Answer on April 17,
2012.

2.  The Bureau of Disability Determination is an agency of the
state which initially evaluates applications for disability
insurance benefits on behalf of the Social Security
Administration.  Tr. 66.

administrative law judge. Tr. 17 and 28-63. On April 29, 2010, the administrative law judge issued a decision denying Weitzel's application. Tr. 17-23. On June 25, 2010, Weitzel filed a request for review with the Appeals Council and after almost 18 months had passed, the Appeals Council on December 7, 2011, concluded that there was no basis to grant Weitzel's request for review. Tr. 1-6 and 11-13.

Weitzel then filed a complaint in this Court on February 6, 2012. Supporting and opposing briefs were submitted and the appeal[3] became ripe for disposition on July 18, 2012, when Weitzel filed a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." It is undisputed that Weitzel met the insured status requirements of the Social Security Act through June 30, 2012. Tr. 17, 19, 102 and 144.

Weitzel, who was born on July 29, 1946, withdrew from school in 1964 after completing the 11th grade. Tr. 35, 97 and 131. Weitzel can read, write, speak and understand the English

---

3. Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." M.D.Pa. Local Rule 83.40.1.

language and perform basic mathematical functions. Tr. 41 and 124. During her elementary and secondary schooling, Weitzel attended regular education classes. Tr. 131. After withdrawing from school, Weitzel did not obtain a General Equivalency Diploma. Tr. 40. Weitzel is considered a person of limited education. 20 C.F.R. § 404.1564(b)(3).

The record reveals that Weitzel had earnings in 1964, 1965, 1969, 1970, 1987 through 1996, and 2000 through 2008. Tr. 103. Her total earnings during those 23 years were $161,236.47. Id. The Court will, however, focus on Weitzel's employment commencing in 1987. Weitzel had employment as a dispatcher for the Area Transportation Authority of North Central, Pennsylvania, Inc., a bus company, from 1987 to 1996.[4] Tr. 104, 112 and 182. Weitzel's earnings during those years were as follows:

| | |
|---|---|
| 1987 | $ 2357.25 |
| 1988 | 6063.27 |
| 1989 | 10987.51 |
| 1990 | 11804.13 |
| 1991 | 12960.81 |
| 1992 | 14179.76 |
| 1993 | 14649.74 |
| 1994 | 16159.13 |
| 1995 | 16566.15 |
| 1996 | 785.48 |

Tr. 103-104. Weitzel's description of the dispatcher position set forth in a document filed with the Social Administration suggests that from an exertional standpoint it primarily was a sedentary

---

4. The administrative law judge found that Weitzel's past relevant employment included the dispatcher position.

3

one. Tr. 115. Weitzel stated that the position involved walking 1 hour, standing 1 hour and sitting 3 hours during an 8-hour workday[5] and the heaviest weight she lifted was less than 10 pounds.[6] Id.

─────────────

5. The hours enumerated by Weitzel do not add up to an 8-hour workday.

6. The terms sedentary, light and medium work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

> (c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can do sedentary and light work.

(continued...)

4

In the year 2000, Weitzel earned $3488.80 when she worked as a recreational therapist at the Charles Cole Memorial Hospital, Coudersport, Pennsylvania. Tr. 104, 112 and 182. The description of the recreational therapist position provided by Weitzel suggests that with respect to the weight lifted it was a sedentary position but with respect to the standing, walking and sitting requirements it was more than a sedentary one. Tr. 114. Weitzel stated that she would walk 3 hours, stand .5 hours, sit 3 hours and stoop .5 hours, and write, type or handle small objects 1 hour. Id.

In 2001, Weitzel worked part of the year as a recreational therapist at the Charles Cole Memorial Hospital earning $1804.67 and then as a driver's license technician for the Pennsylvania Department of Motor Vehicles[7] earning $2752.12. Tr. 38, 104 and 182. Weitzel's total earnings in 2001 were $4556.79. Tr. 103. As a driver's license technician Weitzel would, *inter alia*, answer questions and take photographs. Tr. 113. The description of the driver's license technician position provided by Weitzel suggests that it was more than a sedentary one. Id.

---

6.  (...continued)
20 C.F.R. § 404.1567.

7.  The actual employer mentioned on the earnings record is Future Rehabilitation Center, Inc., 1 Futures Way, Bradford, Pennsylvania. Tr. 104-105.  However, Weitzel testified at the administrative hearing that it was for the Pennsylvania Department of Motor Vehicles. Tr. 38.

The heaviest weight lifted by Weitzel was 10 pounds and she alternated sitting and standing. Tr. 38-39 and 113.

In 2002 through 2008, Weitzel worked as a driver's license technician and had the following earnings:

| | |
|------|----------|
| 2002 | $3843.03 |
| 2003 | 7355.16 |
| 2004 | 7116.69 |
| 2005 | 7122.07 |
| 2006 | 7320.83 |
| 2007 | 8089.17 |
| 2008 | 854.29 |

Tr. 103. Weitzel has not worked since January 23, 2008. Tr. 125. Tr. 58. Weitzel took early retirement at age 62 on July 29, 2008, and is presently receiving Social Security retirement benefits. Tr. 40.

Weitzel claims that she became disabled on January 23, 2008, because of degenerative disc and joint disease of the spine, a pinched nerve causing pain, weakness and numbness in her left hip and leg, right knee weakness, shoulder pain, hand pain, headaches, and a decrease in her cognitive functioning. Tr. 125, 128, 138, 140-141 and 258-259. Weitzel contends that she has difficulty sitting or standing long periods of time and that she is unable to twist or bend. Tr. 125. She further claims she has problems with her memory and concentration which prevent her from working. Tr. 141. The impetus for Weitzel's low back pain, leg weakness, right knee problems, headaches, cognitive difficulties and other functional limitations was a fall on ice that occurred

6

on January 23, 2008, when she was leaving work at the Department of Motor Vehicles. Tr. 386.

A vocational expert did not testify at the administrative hearing or provide a written report regarding Weitzel's past relevant employment. Past relevant employment means work performed by Weitzel during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner[8] and which was substantial gainful activity. 20 C.F.R. §§ 404.1560, 404.1565 and 404.1572.

Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or profit." 20 C.F.R. § 416.1510. In order to amount to substantial gainful activity, the individual's earnings have to rise to at least a minimum level set by regulations of the Social Security Administration. Substantial Gainful Activity, Automatic Determinations, Social Security Online, http://www.ssa.gov/oact/COLA/sga.html (Last accessed

_____

8. It is understood that "the 15-year period is generally the 15 years prior to the time of adjudication at the initial, reconsideration or higher appellate level." Social Security Ruling 82-62, http://www.socialsecurity.gov/OP_Home/rulings/ di/02/SSR82-62-di-02.html (Last accessed August 20, 2013). In this case, the relevant time period would be the 15-year period prior to the decision of the administrative law judge on April 29, 2010, i.e., from April 29, 1995 to April 29, 2010. When the Appeals Council denies review, in contrast to granting review and issuing its own decision, the administrative law judge's decision is the final decision of the Commissioner. It is, therefore, only proper to run the 15-year period back from the decision of the ALJ.

August 20, 2013). In 1995 and 1996, the amount for a non-blind individual was $500 per month or $6000 per year; in 2000 the amount was $700 per month or $8400 per year; in 2001 the amount was $740 per month or $8880 per year; in 2002 the amount was $780 per month or $9360 per year; in 2003 the amount was $800 per month or $9600 per year; in 2004 the amount was $810 per month or $9720 per year; in 2005 the amount was $830 per month or $9960 per year; in 2006 the amount was $860 per month or $10320 per year; in 2007 the amount was $900 per month or $10800 per year; and in 2008 the amount was $940 per month or $11280 per year. Id. With respect to the 15-year period, the only year in which Weitzel's earnings rose to the level of substantial gainful activity was 1995 when she was working as a dispatcher.

Weitzel was 61 years of age on the alleged disability onset date and 64 years of age on the date of the administrative hearing and the issuance of the ALJ's decision. Under the Social Security regulations, a person 55 or older is considered a "person of advanced age." 20 C.F.R. §§ 404.1563(e). The Social Security Administration considers that on or after age 55, a person's age "significantly affects [the] person's ability to adjust to other work" and there are special rules applied to those claimant's in that category. Id. A claimant of advanced age with a severe impairment who is limited to sedentary or light work is automatically considered disabled if the claimant has no transferrable job skills and is unable to perform his or her past

relevant employment. 20 C.F.R. §404.1520(f) and §404.1568(d)(4).
In this case, Weitzel was found by the administrative law judge to
have a severe impairment and that Weitzel could perform her past
relevant employment. Tr. 19 and 22. However, the administrative
law judge identified, without the benefit of testimony from a
vocational expert, the dispatcher, recreational therapist and
driver's license technician positions as Weitzel's past relevant
employment. Tr. 22. Also, the ALJ did not address the issue of
transferability of job skills.

The critical issue in this case is whether substantial
evidence supports the ALJ's finding that Weitzel could perform her
past relevant work as a dispatcher. If substantial evidence does
not support that finding, the decision of the Commissioner must be
vacated and the case remanded to the Commissioner for further
proceedings. Although Weitzel took early retirement, it is
undisputed that election does not prevent her from substituting
disability benefits for her early retirement benefits and
continuing to receive disability benefits until her full
retirement age. It is also undisputed that Weitzel has a limited
education. A claimant with a limited education, no past relevant
employment or unable to perform his or her past relevant
employment, no transferrable jobs skills,[9] 55 years of age or

_____

9. There was no finding by the administrative law judge
regarding the skill level of the dispatcher position. The skill
level is an important factor because a claimant who is age 55 or
older with a limited education whose previous work was <u>unskilled</u>
(continued...)

9

older, and with a severe impairment which limits the claimant to sedentary or light work is automatically entitled to an award of disability benefits. See Medical-Vocational Rules 202.00(c) and 202.02, 20 C.F.R. Part 404, Subpart P, Appendix 2.

For the reasons set forth below, the Court will remand the case to the Commissioner for further proceedings.

## Standard of Review

When considering a social security appeal, the Court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the Court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter

---

9. (...continued)
is automatically entitled to disability benefits if the claimant cannot perform his or her past relevant employment. See Medical-Vocational Rules 202.00(c) and 202.01, 20 C.F.R. Part 404, Subpart P, Appendix 2.

v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment or

impairments are of such severity that he is not only
unable to do his previous work but cannot, considering
his age, education, and work experience, engage in any
other kind of substantial gainful work which exists in
the national economy, regardless of whether such work
exists in the immediate area in which he lives, or
whether a specific job vacancy exists for him, or
whether he would be hired if he applied for work. For
purposes of the preceding sentence (with respect to any
individual), "work which exists in the national economy"
means work which exists in significant numbers either in
the region where such individual lives or in several
regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in

evaluating disability insurance and supplemental security income

claims. See 20 C.F.R. §404.1520; Poulos, 474 F.3d at 91-92. This

process requires the Commissioner to consider, in sequence,

whether a claimant (1) is engaging in substantial gainful

activity,[10] (2) has an impairment that is severe or a combination

of impairments that is severe,[11] (3) has an impairment or

_____

10. If the claimant is engaging in substantial gainful activity,
the claimant is not disabled and the sequential evaluation
proceeds no further. Substantial gainful activity is work that
"involves doing significant and productive physical or mental
duties" and "is done (or intended) for pay or profit." 20 C.F.R.
§ 404.1510.

11. The determination of whether a claimant has any severe
impairments, at step two of the sequential evaluation process, is
a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no
impairment or combination of impairments which significantly
limits the claimant's physical or mental abilities to perform
basic work activities, the claimant is "not disabled" and the
evaluation process ends at step two. Id. If a claimant has any
                                               (continued...)

13

combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social

---

11. (...continued)
severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523 and 404.1545(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 404.1545(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 1545(c).

12. If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

13. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A
regular and continuing basis contemplates full-time employment and
is defined as eight hours a day, five days per week or other
similar schedule. The residual functional capacity assessment
must include a discussion of the individual's abilities. Id; 20
C.F.R. § 404.1545; Hartranft, 181 F.3d at 359 n.1 ("'Residual
functional capacity' is defined as that which an individual is
still able to do despite the limitations caused by his or her
impairment(s).").

## Discussion

The administrative law judge, at step one of the
sequential evaluation process, found that Weitzel had not engaged
in substantial gainful work activity since January 23, 2008, the
alleged disability onset date. Tr. 18.

At step two of the sequential evaluation process, the
administrative law judge found that Weitzel had the following
severe impairment: "chronic back discomfort[.]"[14] Id. The

---

14. "Pain is more appropriately considered a symptom of a
medical impairment. Social Security Ruling 96-3p; Social Security
Ruling 96-7p; HALLEX II-4-1-3 ("[P]ain is a symptom of an
impairment and not an impairment itself"). Medically
determinable impairments, for example, would be a herniated
cervical disc, osteoporosis, obesity, anemia or diabetes." Davis
v. Astrue, Civil No. 805, slip op. at 12 (M.D.Pa. February 15,
2011)(Muir, J.)(footnote omitted). Although mentioning several
conditions, the administrative law judge did not specify what
caused Weitzel's "chronic back discomfort."

administrative law judge also found that Weitzel suffered from a right knee injury and a "post concussion syndrome or cognitive loss" but that those impairments were non-severe.   Id.

At step three of the sequential evaluation process, the administrative law judge found that Weitzel's impairments did not individually or in combination meet or equal a listed impairment. Tr. 20.

At step four of the sequential evaluation process, the administrative law judge found that Weitzel had the residual functional capacity to perform the full-range of light work[15] and that she could perform her past relevant work as a dispatcher, recreational therapist and driver's license technician. Consequently, the ALJ found that Weitzel was not disabled. Tr. 20-23.  There was no evidence from a vocational expert presented at the administrative hearing and the ALJ did not proceed to step 5 of the sequential evaluation process.

The administrative record in this case is 391 pages in length, primarily consisting of medical and vocational records. Weitzel argues, *inter alia*, that the administrative law judge erred in failing to consider the medical condition of Weitzel's cervical spine in setting Weitzel's residual functional capacity.

15.   The "full range of work" is defined as "[a]ll or substantially all occupations existing at an exertional level." Social Security Ruling 83-10.

The Court has thoroughly reviewed the medical records and finds merit in Weitzel's argument.

On May 15, 2008, Weitzel had an MRI of the cervical spine which revealed the following: "Broad based protrusions involving the C5-6 and C6-7 discs with slight associated impingement on the cord and bilateral foraminal encroachment." Tr. 223. The ALJ did not address this evidence in his decision.

The administrative law judge not only failed to address the condition of Weitzel's cervical spine, he also failed to address repeated physical examination findings by James Barke, M.D., a treating physician, that Weitzel had limitations in forward flexion (bending) and lateral bending as well as positive straight leg raising tests on the left.[16] Tr. 251-254, 317-320 and 323-325. In fact, Dr. Barke on July 31, 2008, found that Weitzel had "[m]arked limitations in forward flexion and lateral bending" and a positive straight leg examination on the left. Tr. 254. The ALJ did not address this evidence and how it would impact Weitzel's ability to perform the full-range of light work. A

---

16. The straight leg raise test is done to determine whether a patient with low back pain has an underlying herniated disc. The patient, either lying or sitting with the knee straight, has his or her leg lifted. The test is positive if pain is produced between 30 and 70 degrees. Niccola V. Hawkinson, DNP, RN, Testing for Herniated Discs: Straight Leg Raise, SpineUniverse, http://www.spineuniverse.com/experts/testing-herniated-discs-straight-leg-raise (Last accessed August 20, 2013).

vocational expert did not testify regarding the impact that a "marked limitation in forward flexion and lateral bending" would have on Weitzel's ability to perform the full-range of light work or her ability to perform her past relevant work as a dispatcher.

Also, the ALJ failed to address medical evidence indicating that Weitzel suffered from radiculopathy[17] impacting her left leg. Tr. 313. On April 6, 2009, an MRI of Weitzel's lumbar spine revealed "[b]road based central/left protrusion of the L5-S1 disc with associated foraminal encroachment **and impingement** of the left S1 nerve root." Id. (emphasis added). On February 27, 2009, Lee R. Guterman, Ph.D., M.D., a neurologist treating Weitzel, stated that "[t]he patient has what I fear is lumbar instability at L5-S1 secondary to disc degeneration and it is now causing some foraminal compromise and pinching the nerve root going down the left leg in an S1 distribution." Tr. 312. On

_____

17. Radiculopathy is a condition where one or more nerves or nerve roots are affected and do not work properly. The nerve roots are branches of the spinal cord. They carry signals to the rest of the body at each level along the spine. Radiculopathy is a result of disc herniation or an injury causing foraminal impingement of an exiting nerve (the narrowing of the channel through which a nerve root passes). See, generally, Radiculopathy, MedicineNet.com, http://www.medicinenet.com/ radiculopathy/article.htm (Last accessed August 20, 2013). A herniated disc is one cause of radiculopathy. Id. Radiculopathy is a step beyond degenerative disc disease and severe cases may requires surgical intervention. Id.

April 24, 2009, Dr. Guterman stated that Weitzel "may need surgical intervention in the future." Tr. 337.

The Social Security regulations contemplate the administrative law judge considering whether there are any medically determinable impairments and then when setting a claimant's residual functional capacity considering the symptoms of both medically determinable severe and non-severe impairments. 20 C.F.R. § 404.1529. The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 404.1520(c). If a claimant has no impairment or combination of impairments which significantly limit the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 404.1520(d)-(g). A failure to find a medical condition severe at step two will not render a decision defective if some other medical condition was found severe at step two. However, all of the medically determinable impairments both severe and non-severe must be considered at step two and then at step four when setting the residual functional capacity. The social security regulations mandate such consideration and this court has repeatedly so indicated. See, e.g., Christenson v. Astrue, Civil

No. 10-1192, slip op. at 12 (M.D. Pa. May 18, 2011)(Muir, J.);
Little v. Astrue, Civil No. 10-1626, slip op. at 19-21 (M.D.Pa.
September 14, 2011)(Kosik, J.); Crayton v. Astrue, Civil No. 10-
1265, slip op. at 32-35 (M.D. Pa. September 27, 2011)(Caputo, J.);
20 C.F.R. §§ 404.1523 and 404.1545(a)(2).

The record suggests that Weitzel suffered from at least
two conditions which were not addressed by the ALJ: a problem with
her cervical spine and a radiculopathy impacting her left hip and
leg. The failure of the administrative law judge to find the above
noted conditions as medically determinable impairments, or to give
an adequate explanation for discounting them, makes his decisions
at steps two and four of the sequential evaluation process
defective.

The error at step two of the sequential evaluation
process draws into question the administrative law judge's
residual functional capacity determination and assessment of the
credibility of Weitzel. The administrative law judge found that
Weitzel's medically determinable impairments could reasonably
cause Weitzel's alleged symptoms but that Weitzel's statements
concerning the intensity, persistence and limiting effects of
those symptoms were not credible. Tr. 21. This determination by
the administrative law judge was based on an incomplete and faulty
analysis of all of Weitzel's medically determinable impairments.

The Court's review of the administrative record reveals that the decision of the Commissioner is not supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be vacated and the case will be remanded to the Commissioner for further proceedings.

An appropriate order will be entered.


**United States District Judge**

Date: August 23, 2013